UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JORGE GOMEZ IZAGUIRRE                       CIVIL ACTION

VERSUS                                      NO. 08-3551

C & C MARINE AND REPAIR, L.L.C., ET AL.     SECTION "B"(5)

**ORDER AND REASONS**

**IT IS ORDERED** that Defendants' opposed Motion for Summary Judgment is **DENIED** on borrowed servant status. (Rec. Docs. 19, 22).

**DISCUSSION**

A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits,

depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.  The Longshore & Harbor Workers Compensation Act and the Borrowed Servant Doctrine

Defendants contend that Mr. Izaguirre is a longshoreman who is being paid benefits under the Longshore & Harbor Workers Compensation Act (hereinafter "LHWCA"), 33 U.S.C. § 901, *et seq*. Defendants note that the LHWCA provides tort immunity to employers:

> The liability of an employer [for compensation benefits] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

33 U.S.C. § 905(a).

Defendants further contend that this tort immunity extends to cases where an employer "borrows" an employee of another employer. The court in *Ruiz v. Shell*, 413 F.2d 310 (5th Cir. 1969), discussed the borrowed servant doctrine, and explained nine factors used to determine whether LHWCA tort immunity is extended in cases where an

2

employer borrows the employee of another employer: (1) who has control over the employee and the work he is performing; (2) whose work is being performed; (3) whether there was an agreement between the original and borrowed employers; (4) whether the employee acquiesces to the new work situation; (5) whether there was a temporary termination by the general employer of the relationship with the "servant;" (6) who provides the instruments and place for performance of the work; (7) whether the employment of the "servant" is for a considerable length of time; (8) who had the right to discharge the employee; and (9) who had the obligation to pay the employee. *Id*. at 312-13. The court explained that these factors have been given great weight, though "no one of these factors, or any combination of them is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship." *Id*. at 312.

### (1) Control Over the Employee

The court in *Ruiz* explained that "[t]he factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship." *Id*. Generally, an employee is considered "borrowed" when his general employer gives up control to the borrowing employer. *Conner v. American Marine Corp.*, 684 So.2d 550, 553 (La. App. 4 Cir. 1996). Defendants claim that Plaintiff Izaguirre's immediate supervisor, Alexander Mata, was a C&C employee, and that the supervisor gave Izaguirre his day-to-day

instructions for the entire time that he worked on the C&C site. (Rec. Doc. 19-4). Defendants further claim that no SCS represetative was on the job or ever gave Izaguirre any directions. As such, Defendants claim that C&C had total control over Plaintiff, and that SCS relinquished control to C&C. (Rec. Doc. 19-4).

It is undisputed that Izaguirre's direct supervisor for the job at C&C was Alexander Mata, and that Mata was an SCS employee before he was a C&C employee. Plaintiff contends, however, that there is a genuine issue of material fact as to whether Mata was still an SCS employee at the time of the accident. (Rec. Doc. 22). Plaintiff claims that if Mata was still employed by SCS at the time of the accident, then it would have been SCS that was giving Izaguirre his instructions, and thus C&C would not be in "control" so as to implicate the borrowed servant doctrine.

Plaintiff first refers to the testimony of Anthony Cibilich, in which Cibilich states that he is not sure whether Mata was an employee of C&C or SCS at the time of the accident:

> Q. And you mentioned that Mr. Alex Mata was one of your employees . . . .
>
> A. He Works for C&C Marine now. And he has worked for C&C for quite some time. I am not sure –
>
> Q. Okay.
>
> A. I haven't pulled the time sheet to know if he was my employee at the time.

(Rec. Doc. 19-7 at 24).

Mata testified that he was indeed an employee of C&C at the time of the incident:

> Q. Who were you working for at the time of this incident, May 25, 2007?
>
> . . .
>
> A. It was C & C.

(Rec. Doc. 19-6 at 10-11).

Izaguirre's recollection, however, is that Mata was employed by SCS:

> Q. And when you worked at C & C Marine making barges, who was your foreman or supervisor?
>
> A. Alex Mata, M-A-T-A.
>
> Q. Who did he work for, if you know?
>
> A. For the company I work for – SCS.
>
> Q. He didn't work for C & C Marine – if you know?
>
> A. No.
>
> Q. You thought he worked for SCS?
>
> A. Yes. He works for SCS because he was around on the jobs with us. He was our foreman and he was an SCS employee.

(Rec. Doc. 19-5 at 10).

In Defendants' reply to Plaintiff's Opposition, Defendants contend that Cibilich's testimony is that he did not check his records to confirm that Alex Mata was his employee at the time of the accident, so he could not state this fact for sure. (Rec. Doc.

5

23-3). Defendants contend, however, that Mata's deposition confirms that he was in fact employed by C&C at the time of the incident.

The only summary judgment evidence presented by the parties is deposition testimony of Plaintiff, Mata, and Cibilich. Although Mata states in his deposition that he was working for C&C at the time of the incident, this testimony is in direct conflict with the testimony of Izaguirre, who believes that Mata was employed by SCS at the time of the incident. A finding of fact as to who was Mata's employer at the time of the incident, therefore, is based upon reliability of testimony. Such a determination is reserved for the finder of fact, and is thus improper at the summary judgment stage. Furthermore the cutoff for discovery is not until January 12, 2010, thus providing ample time for additional discovery, which might provide documentary or other evidence. (Rec. Doc. 18).

The Court also notes the testimony of Anthony Cibilichi, the owner of C&C, (Rec. Doc. 19-7 at 9-10), who explained that the reason that no accident report was made for Izaguirre's accident was that he was an SCS employee. (Rec. Doc. 22-2 ¶ 1). In discussing why an accident report was not made, Mr. Cibilich further explained that C&C's policy might not cover "contractors." (Rec. Doc. 19-7 at 39). It is not, however, necessary that Plaintiff be an actual employee of the "borrowing employer" for the borrowed servant doctrine to be implicated. *See Ruiz*, 413 F.2d at 311. Nonetheless, material factual disputes remain relative to the

control factor, preventing summary disposition at this time.

### (2) Whose Work is Being Performed

It is undisputed that while at C&C, Plaintiff's sole job was to weld, fit, and construct barges at C&C, and that constructing barges was not part of the work or business of SCS. (Rec. Doc. 19-3 ¶ 2); (Rec. Doc. 22-2 ¶ 2). As such, the work was clearly being performed for C&C, rather than SCS.

### (3) Agreement Between Original and Borrowing Employer

It is undisputed that there was a meeting of the minds between SCS and C&C, as demonstrated by the written contract between the parties, which demonstrates that SCS agreed to provide labor for the construction of barges for C&C. (Rec. Doc. 19-3 ¶ 3); (Rec. Doc. 22-2 ¶ 2). Thus there was an agreement between the "original employer" and the "borrowing employer."

### (4) Employee Acquiescence to New Work Situation

The next *Ruiz* factor is whether the employee acquiesced to the new work situation. *Ruiz*, 413 F.2d at 313. Defendants contend that Mr. Izaguirre knew that he would be working at C&C, doing the work of C&C, and that his work was directed and controlled by C&C. Furthermore, Defendants contend that Mr. Izaguirre showed his acquiescence by reporting directly to C&C, where they would transport him to their job site, and by punching his time card at C&C. (Rec. Doc. 19-4).

Plaintiff again argues that there is an unresolved issue of fact as to who "controlled" him, for the same reasons that he disputes factor (1). (Rec. Doc. 22-2 ¶ 3). If Mr. Izaguirre was under the impression that his direct supervisor, Mr. Mata, was and SCS employee, rather than a C&C employee, it cannot be said that he acquiesced to the new work situation. Thus this factor weighs in favor of a finding that Plaintiff was not a borrowed servant of C&C.

### (5) Termination of Relationship with Original Employer

Courts have held that this factor does not require that the lending employer completely sever his relationship with the employee. *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). Defendants admit that SCS did not completely sever its relationship with Plaintiff, however they argue that the relationship that SCS maintained with Mr. Izaguirre was "merely nominal and perfunctory." (Rec. Doc. 19-4). They argue that the sole duty of SCS to Plaintiff was to distribute pay checks to him.

Plaintiff disputes that the relationship was not "merely nominal" for the same reasons that he disputes factors (1) and (4). (Rec. Doc. 22-2 ¶ 4). If Mr. Mata was an SCS employee, rather than a C&C employee, the relationship between SCS and Plaintiff would be more than nominal and perfunctory. Again, conflicting testimony on material facts prevents a summary finding on borrowed servant

status.

### (6) Furnishing of Tools and Place of Performance

It is undisputed that C&C provided the tools that Plaintiff used on the job, and that he performed all of his works at the C&C facility or job site on the Industrial Canal. (Rec. Doc. 19-4); (Rec. Doc. 22-2 ¶ 5).

### (7) Length of New Employment

It is undisputed that Mr. Izaguirre began to work for SCS shortly after he came to New Orleans in the fall of 2006, as a welder making barges at the C&C facility. His accident occurred the following year in May of 2007. (Rec. Doc. 19-4 ¶ 7); (Rec. Doc. 22-2 ¶ 6). However, Plaintiff disputes Defendants' conclusion that "since he moved to the New Orleans area, he worked entirely for C & C Marine." (Rec. Doc. 22-2 ¶ 6). Since the Court must interpret the conflicting testimony in favor of a finding that Mr. Mata was employed by SCS at the time of the incident, it cannot be said that Mr. Izaguirre worked "entirely for C & C Marine" since he arrived in New Orleans. The court in *Capps* held that "[i]n the case where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." 784 F.2d at 618. Thus this factor neither weighs in favor, nor in opposition of a finding that Plaintiff was the "borrowed servant" of C&C.

### (8) Right to Discharge Employee

The eighth factor articulated in *Ruiz*, 413 F.2d at 313, is whether the "borrowing" employer had the right to discharge the employee. Plaintiff does not dispute Defendants' statement that C&C had the right to discharge Mr. Izaguirre. (Rec. Doc. 19-4); (Rec. Doc. 22-2 ¶ 7). Thus this factor weighs in favor of a finding that Plaintiff was a "borrowed servant."

### (9) Obligation to Pay Employee

The last *Ruiz* factor is who had the obligation to pay the employee. 413 F.2d at 313. Defendants contend that C&C, rather than SCS dealt with Plaintiff's time card, and that he actually punched his time card at C&C. (Rec. Doc. 19-4). They further argue that while his paychecks were drawn on an SCS account, there is neither testimony nor other evidence to indicate whether C&C had a legal obligation to pay Plaintiff if SCS failed to do so.

Plaintiff argues that these allegations recite questions of law which are clearly unresolved at this time and preclude summary judgment. (Rec. Doc. 22-2 ¶ 8). Even under C&C's interpretation, it is clear that SCS had the duty to pay Mr. Izaguirre, and not C&C. As such, this factor weighs in favor of a finding that Mr. Izaguirre was not C&C's "borrowed servant."

### C. Conclusion

Upon reviewing all of the relevant testimony and depositions

in the light most favorable to the nonmoving party, it is clear that there is a disputed issue of material fact as to whether Mata was employed by C&C or by SCS at the time of the incident. Thus the conflicting testimony of Mata and Izaguirre must be interpreted in the light most favorable to Plaintiff, and as such the Court must assume that Mata was employed by SCS at the time of the incident.

If Mata was employed by SCS at the time of the incident, then many of the factors articulated in *Ruiz* to determine if Izaguirre was a borrowed servant of C&C would weigh in favor of a finding that he was not. Assuming that Mata was employed by SCS at the time of the incident: (1) SCS was in control of Plaintiff, not C&C; (2) Plaintiff was doing the work of C&C; (3) there was a formal agreement between SCS and C&C; (4) Izaguirre did not acquiesce to the new work situation; (5) SCS did not temporarily terminate its relationship with Izaguirre; (6) C&C provided the tools and the place for performance of the work; (7) Plaintiff did not work for C&C for a considerable length of time; (8) C&C had the right to terminate Plaintiff; and (9) SCS had the obligation to pay Plaintiff, not C&C.

Thus factors (1), (4), (5), and (9) weigh in favor of a finding that Izaguirre was not the borrowed servant of C&C, while factors (2), (3), (6), and (8) weigh in favor of a finding that he was indeed the borrowed servant of C&C. Furthermore, factor (7)

neither weighs in favor of nor in opposition of a finding that he was the borrowed servant. "While no one of these factors is decisive . . . [t]he factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship." *Ruiz*, 413 F.2d at 312. That factor does not present itself at this time for summary resolution.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment be **DENIED**.


New Orleans, Louisiana, this 11th day of August, 2009.


```
                                    _____
                                          IVAN L.R. LEMELLE
                                    UNITED STATES DISTRICT JUDGE
```